UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUAN EDDY SARMIENTO PEREZ,                        REPORT AND
                              Plaintiff,          RECOMMENDATION
                  -against-
COMHAR GROUP LLC, et al.,                         19-CV-0964 (FB) (JO)
                              Defendants.
-------------------------------------------------------------------X

James Orenstein, Magistrate Judge:

      Plaintiff Juan Eddy Sarmiento Perez ("Sarmiento") accuses defendant Comhar Group LLC ("Comhar"), and its principal, defendant Leonel Lennym ("Lennym"), of failing to pay him the wages to which he was entitled under federal and state law. *See* Docket Entry ("DE") 1 ("Complaint"); Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); New York Labor Law §§ 190, 650, *et seq.* ("NYLL"). The defendants did not respond, and Sarmiento now seeks a default judgment. DE 12. Upon a referral from the Honorable Frederic Block, United States District Judge, I now make this report and for the reasons set forth below respectfully recommend that the court enter judgment against the defendants jointly and severally in the total amount of $41,594.87, consisting of $13,699.06 in unpaid wages, the same amount in liquidated damages, $5,000 for each of the two records-related violations, $2,048.01 in prejudgment interest, $1,471.25 in attorneys' fees, and $677.50 in costs.

I.    <u>Background</u>

      The following factual summary derives from the unrebutted non-conclusory allegations in the Complaint, Sarmiento's declaration, DE 13-6 ("Sarmiento Decl."), which was submitted in support of Sarmiento's motion for default judgment, and Sarmiento's testimony at an inquest held on January 22, 2020, DE 26-1 (transcript of January 22, 2020 inquest) ("Tr."). Sarmiento worked for the defendants from approximately January 2018 until January 2019 as a carpenter who regularly handled goods and supplies that were produced outside the State of New York. Sarmiento worked

approximately between 58.5 and 73.5 hours per week. Sarmiento was paid at a rate of $17.50 per hour from approximately January 2018 until November 2018, and a rate of $18.75 per hour from approximately November 2018 until the end of his employment in January 2019. The amount paid to Sarmiento varied on a weekly basis despite the fact that he was paid at a consistent hourly rate overall. The defendants did not pay Sarmiento the minimum and overtime wages to which he was entitled, nor did they maintain or provide him with the wage notice or statements required under federal and state law. *See* Complaint ¶¶ 32-34, 38-39, 46-56; Sarmiento Decl. ¶¶ 8-9, 12, 14-15; Tr. 9-12.

On February 19, 2019, Sarmiento filed a Complaint asserting eight causes of action. The first two claims contend that the defendants violated the FLSA by failing to pay Sarmiento minimum and overtime wages. *See* Complaint ¶¶ 60-70. The next two claims assert parallel claims under the NYLL. *See id.* ¶¶ 71-79. The fifth and sixth claims accuse the defendants of failing to provide Sarmiento with the notice and pay statements required under the NYLL. *See id.* ¶¶ 80-85. The seventh cause of action claims that the defendants violated the NYLL by requiring Sarmiento to pay for the tools of his trade without reimbursement. *See id.* ¶¶ 86-88. Finally, the eight cause of action claims that the defendants violated the NYLL by failing to pay Sarmiento on a regular weekly basis. *See id.* ¶¶ 89-91.

Sarmiento effectively served process on each defendant. *See* DE 5 (Comhar); DE 7 (Lennym). No defendant responded, and Sarmiento eventually asked the Clerk to enter the default of each. *See* DE 9; DE 10. The Clerk did so on May 24, 2019. *See* DE 11. Sarmiento filed the instant motion for default judgment on July 9, 2019 and served it on each defendant. *See* DE 12 (motion); DE 14 (supporting memorandum) ("Memo."); DE 13 (counsel's supporting declaration) ("Faillace Decl."); Sarmiento Decl.; DE 13-7 (billing records); DE 13-8 (damages chart); DE 15 (service affidavit).

The court referred the motion to me by Order dated July 10, 2019, and I issued another order on the same date affording all parties an opportunity to supplement the record. Sarmiento served that order on the defendants as well. *See* DE 16. I scheduled a hearing to determine the amount of damages and attorneys' fees to be awarded, if any, on the basis of the defendants' default. *See* Order dated December 18, 2019. The hearing took place on January 22, 2019 with Sarmiento as the only witness presented to offer testimony. Following the hearing, I allowed Sarmiento an opportunity to supplement his motion for default judgment with bank statements reflecting the amounts paid to him and paychecks deposited into his bank account during the period at issue. *See* DE 22. On February 5, 2020, Sarmiento provided certain check images and a heavily redacted copy of his bank statements from the period at issue. *See* DE 26.

II.   Discussion

A.   Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered, however, does not suffice to establish liability on its claims: it remains the plaintiff's burden to demonstrate the defendant's liability on each asserted cause of action. *See, e.g., id.* at 84.

If the defaulted complaint establishes liability, the court must then "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (internal quotation marks omitted). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumptively correct. *Chun Jie*

*Yin v. Kim*, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).

      B.    <u>Substantive Federal and State Wage Law</u>

      The FLSA applies to "employers," a class that the statute defines broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). To fall within the ambit of the FLSA's wage and overtime protections, an employee must demonstrate either that he was "engaged in commerce or in the production of goods for commerce," or that his employer was "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *see also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257-58 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009).

      The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the employee's regular rate of pay) for hours worked above 40 hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Further, an employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions. *See id.* § 211(c). An employee bringing an action for unpaid overtime compensation under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *Reich*, 121 F.3d at 66-67 (citing *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (citations omitted). If an employer fails to keep the required records, the plaintiff may meet this burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Reich*, 121 F.3d at 66-67 (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88). A plaintiff may do so solely through his or her own recollection. *Rivera*, 497 F. Supp. 2d at 388 (citing *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)). Finally, the FLSA prohibits an employer from eating into an employee's statutory wages by forcing the

4

employee to provide necessary work equipment at the employee's own cost. *See* 29 C.F.R. § 531.35 (1967); 29 U.S.C. § 206(a).

The relevant provisions of the NYLL mirror the FLSA in most but not all respects. Similar to the FLSA, New York defines an employer as a "person … employing any" employee. NYLL § 190(3). It likewise requires employers to pay any employee who works as "a mechanic, workingman, or laborer" on a weekly basis with each payment made "not later than seven calendar days after the end of the week in which the wages are earned." *Id.* §§ 190(4), 191(1)(a)(i). New York law also mandates a 150 percent premium for overtime work. 12 N.Y.C.R.R. § 142-2.2. New York likewise prohibits employers from forcing employees to pay for the tools of their trade. *See* NYLL §§ 193, 198-b. Unlike the FLSA, however, New York law does not require the plaintiff to show a nexus with interstate commerce or any minimum amount of annual sales. *See Osorio v. Taste of Thai Inc.*, 2018 WL 8059564, at *3 (E.D.N.Y. Sept. 12, 2018) (citation omitted). New York also provides for a longer limitations period: while claims under the FLSA must be brought within two years of a violation (or three years for a willful violation), the corresponding period under the NYLL is six years. *See id.*; 29 U.S.C. § 255(a); NYLL § 663(3). In addition, New York law offers workers protections the FLSA does not: it requires employers to provide each employee with accurate wage statements at the time wages are paid. *See id.*; NYLL §§ 195(1)(a), 195(3).

C.    Liability

The defendants' default establishes the truth of Sarmiento's factual allegations concerning their failure to pay minimum wage and overtime pay; their failure to provide wage notices and statements; and their failure to reimburse him for job-related expenses. In order to establish the defendants' liability, Sarmiento must also establish that the defendants employed him for purposes of applicable law, and that he is within the class of persons entitled to the wage laws' protections. As

discussed below, I conclude that he has done so and that he therefore has established each defendant's liability on all of the Complaint's claims.

       1.    <u>Employers</u>

The applicable federal and state statutes have similar standards to determine whether a party qualifies as a plaintiff's employer. *See* 29 U.S.C. § 203(d) (defining an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee"); NYLL § 2(6) (defining an employer as a "person employing any" employee). Recognizing the FLSA's remedial purpose, courts in this jurisdiction have adopted an expansive view of the employment relationships to which the wage laws apply. *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). To determine whether the Complaint adequately alleges that each of the defendants employed Sarmiento for purposes of his wage claims, the court should consider the "economic reality" of his relationship with each defendant. *See Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); *Sarmiento v. Merrick Deli & Grocery*, 2015 WL 4104790, at *2 (E.D.N.Y. July 8, 2015) (quoting *Fermin v. Las Delicias Peruanas Rest., Inc.*, 2015 WL 1285960, at *15 (E.D.N.Y. Mar. 19, 2015)). The central inquiry of this determination is how much control the "employer" exercised over the "employee." *Barfield*, 537 F.3d at 142. The relevant factors include the extent to which each defendant had the power to hire and fire Sarmiento, supervised and controlled his work schedule or the conditions of his employment, determined the rate and method of his pay, and maintained employment records. *Id.* (internal citations omitted). No single factor is dispositive, and "any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

Sarmiento adequately alleges that both defendants employed him at Comhar and had authority to hire and fire him and to control his working conditions and compensation. *See*

Complaint ¶¶ 20-23. As a result, they are jointly and severally liable for the claimed statutory violations. *See* 29 C.F.R. § 791.2(b)(3) ("a joint employment relationship generally will be considered to exist ... [w]here the employers ... may be deemed to share control of the employee ... [because] one employer controls ... the other employer"); *see also Drozd v. Vlaval Const. Inc.*, 2011 WL 9192036, at *6 (E.D.N.Y. Oct. 18, 2011) (collecting cases); *Shim v. Millennium Grp.*, 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010) (imposing joint and several liability under FLSA where complaint contained allegations of actions taken collectively by multiple defendant employers).

2.    <u>Applicability of the FLSA</u>

To establish coverage under the FLSA, an employee must demonstrate that he was personally "engaged in commerce or in the production of goods for commerce," or that his employer was "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *see Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007) (discussing individual and enterprise coverage). I conclude that Sarmiento has made factual allegations sufficient to establish enterprise coverage under the FLSA.

To properly plead enterprise coverage, an employee must demonstrate that an employer has annual gross sales or revenues greater than $500,000 and regularly and recurrently has two or more employees either engaged in commerce or "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce[.]" 29 U.S.C. § 203(s)(1)(A)(i)-(ii); see 29 C.F.R. § 779.238. Sarmiento has satisfied that requirement by pleading that from 2018 to 2019, the defendants had a gross annual volume of sales of at least $500,000 and that "numerous items that were used in the carpentry company" were produced outside of New York. *See* Complaint ¶¶ 28-29. Although Sarmiento's description of "numerous items that were used in the carpentry company" is vague, this court has previously held that "virtually every enterprise in the nation doing

7

the requisite dollar volume of business is covered by the FLSA." *Shim v. Millennium Grp.*, 2009 WL 211367 at *3 (E.D.N.Y. Jan. 28, 2009) (Block, J.).

      D.    <u>Relief</u>

          1.    <u>Unpaid Wages</u>

At all relevant times, the FLSA required the defendants to pay Sarmiento a minimum hourly wage of $ 7.25. 29 U.S.C. § 206(a)(1)(C). The NYLL provided for a minimum hourly wage of $13.00 from the start of the damages period in January 2018 through most of that year. The New York City minimum hourly wage rose to $15.00 per hour on December 31, 2018. *See* 12 N.Y.C.R.R. § 142-3.1(a)(1)(i). Both jurisdictions require employers to pay workers one-and-one half times their regular rate for each hour worked over forty hours worked in a week. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4.

Although Sarmiento has asserted a claim for unpaid minimum wage in the Complaint, *see* Complaint ¶ 64, the evidence he submitted in support of the default judgment motion undermines it. Sarmiento avers that he was paid $17.50 per hour from January 2018 to November 2018 and $18.75 per hour from November 2018 to January 2019. *See* Sarmiento Decl. ¶¶ 14-15. In his supporting memorandum, Sarmiento does not explain how he can recover any amount of minimum wages under these circumstances, and he appears to allocate the entire amount of claimed unpaid wages ($13,425.00) to unpaid overtime premiums. *See* Memo. at 5; DE 13-8 (damages chart) at 1. However, Sarmiento does claim unpaid wages for one week of work for which he was not paid at all. *See* Tr. at 14; Complaint ¶ 40. Sarmiento does include damages for his week of non-payment in his damages calculations. *See* DE 13-8 (damages chart) at 1. Such damages can be recovered under Sarmiento's claim for unpaid minimum wage. *See Humphrey v. Rav Investigative Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 500 (S.D.N.Y. 2016) (denying motion to dismiss and finding that a plaintiff "did not make minimum wage any day for which he was not paid at all.")

Sarmiento is entitled to an award of unpaid overtime, but the inconsistent information he has submitted in support of his motion makes it difficult to determine the amount due with reasonable certainty. The evidence comes from Sarmiento's pre-inquest declaration, his inquest testimony, and his post-inquest submission of certain bank records (including heavily redacted statements and certain paychecks from Comhar). *See* DE 13-6; DE 26. Although Sarmiento has provided no explanation of the latter, I infer that the unredacted portions of the bank statements are meant to reflect Sarmiento's deposits of payments he received from the defendants during the relevant period. *Compare* DE 26-2 (bank statements) *with* DE 26-3 (paychecks).

Although Sarmiento asserted that he was paid wages at hourly rates that remained constant throughout portions of his employment – $17.50 January to November 2018 and $18.75 after that – he also testified that he received weekly paychecks in varying amounts that Lennym occasionally supplemented. *See* Tr. at 9-12. That testimony jibes with the fluctuating deposit amounts reflected in the redacted bank statements Sarmiento submitted. *See* DE 26-2 (bank statements). However, those statements include no information for 22 of the weeks at issue. The absence of information for two of those weeks can be explained: Sarmiento testified that he took one week off from work due to a family member's illness (and therefore received no pay for that week) and that the defendants failed to pay him at all for one of the final weeks of his employment. *See* Tr. at 14.

Sarmiento worked six days per week, beginning each day at 7:00 a.m. and ending at 5:30 p.m. for two or three of those days and at 8:00 p.m. on the others, with 45 minutes of break time each day. *See* Tr. at 4-8; Sarmiento Decl. ¶ 12. Resolving ambiguities in the defendants' favor (because it is Sarmiento's burden to prove his damages with reasonable certainty), I therefore calculate that Sarmiento worked 66 hours per week.[1] Based on my review of the bank records and Sarmiento's

---

[1] Specifically, I assume that Sarmiento 9.75 hours (7:00-5:30 with a 45-minute break) three days per week, and 12.25 hours (7:00-8:00 with a 45-minute break) for three days per week.

testimony, I conclude that he worked at an hourly rate of $17.50 from the week starting January 15, 2018 through the week starting November 5, 2018 (for a total of 44 weeks), and then at an hourly rate of $18.75 during the eleven weeks from November 12, 2018 through his termination at the end of the week starting January 21, 2019.[2]

In the absence of other information, and in light of the fact that it is Sarmiento's burden to establish damages to a reasonable certainty, I assume that the week Sarmiento missed work was after his hourly wage rose to $18.75. Sarmiento's testimony about the week he received no pay at all suggests that it too occurred when his hourly wage was $18.75, and his calculation of damages appears to reflect that it occurred during that period as well. See Tr. at 14; DE 13-8 (damages chart) at 1. Finally, Sarmiento also testified that during his employment he took a total of two days off from work. *See* Tr. at 14. Absent additional information, I assume that both of those were days when he would otherwise have worked until 8:00 p.m. at an hourly wage of $18.75 and that they occurred in the same week. Taking all of those assumptions into account, I calculate Sarmiento's hours during the eleven weeks that his hourly wage was $18.75 as follows: ten weeks in which he worked his usual 66-hour schedule (with 22 hours of overtime during each of those weeks), for one of which he received no pay at all, and one week in which he worked a total of 41.5 hours over four days (including 1.5 hours of overtime).

Based on the foregoing facts, I calculate that Sarmiento has established that he is owed unpaid wages in the total amount of $13,699.06.[3]

---

[2] Sarmiento testified that he began working for the defendants "in the first few weeks" of January 2018 and that he was terminated "toward the end of" January 2019. Tr. at 6, 7. The dates set forth above for his beginning and end dates, as well as the date his hourly wage increased, are reasonably assumed based on that testimony and the bank records Sarmiento later submitted.

[3] For 44 weeks, Sarmiento worked 66 hours per week at an hourly wage of $17.50 and is therefore owed $8.75 per hour for 26 hours of overtime each week. $8.75/hr. * 26 hrs./wk. * 44 wks. = $10,010.00. For nine weeks, Sarmiento worked 66 hours per week at an hourly wage of $18.75 and is

2.      Liquidated Damages

Federal and state law provide for an additional award of liquidated damages to a plaintiff who establishes that her employer has failed to pay required wages. An employer who violates the FLSA "shall be liable" for unpaid minimum and overtime wages in "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[4] The same amount of liquidated damages is available under the NYLL. *See* NYLL § 198(1-a). Because the two regimes provide for the same measure of liquidated damages, they presumably are designed to remedy similar harms; accordingly, the court should award liquidated damages only under one statute rather than award cumulative liquidated damages under both. *See, e.g., Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 n.11 (E.D.N.Y. 2012); *see also Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 381 & n.3 (E.D.N.Y. 2013) (rejecting request for cumulative awards of liquidated damages), *aff'd*, 568 F. App'x 78 (2d Cir. 2014). I therefore conclude that on his first four causes of action, Sarmiento is entitled to $13,699.06 in liquidated damages.

3.      Wage Notice

An employee who does not receive a wage notice within ten business days of his or her first day of employment may recover $50 for each workday that the violation continues, up to a maximum of $5,000. NYLL § 198(1-b). Sarmiento worked far more than 100 days without ever

---

therefore owed $9.375 per hour for 26 hours of overtime each week. $9.375/hr. * 26 hrs./wk. * 9 wks. = $2,193.75. For one week, Sarmiento worked 41.5 hours at an hourly wage of $18.75 and is therefore owed $9.375 per hour for 1.5 hours of overtime. $9.375/hr. * 1.5 hrs. = $14.06. Finally, the defendants owe Sarmiento his regular and overtime wages for the week they did not pay him at all in the amount of $1,481.25. The sum of the four amounts is $10,010.00 + $2,193.75 + $14.06 + $1,481.25 = $13,699.06.

[4] A defendant employer can avoid such an award by proving that the violation was the result of a good faith error. *See* 29 U.S.C. § 260; *see Reich*, 121 F.3d at 70-71. A defaulting defendant necessarily fails to meet that burden and should therefore be liable for liquidated damages. *See Castellanos v. Deli Casagrande Corp.*, 2013 WL 1207058, at *6 (E.D.N.Y. Mar. 7, 2013) (report and recommendation), *adopted*, 2013 WL 1209311 (E.D.N.Y. Mar. 25, 2013).

receiving the required notice. *See* Sarmiento Decl. ¶ 20. Accordingly, on the fifth cause of action, Sarmiento is entitled to $5,000.00 for the notice violation.

        4.     <u>Wage Statements</u>

New York law requires employers, when paying an employee's wages, to provide the employee a wage statement containing certain information, including the hours being compensated, the wages paid, and any deductions. *See* NYLL § 195(3). An employee may recover $250 per day for each violation, up to a maximum of $5,000. *See* NYLL §§ 195(1)(a), 197, 198(1-d). The defendants failed to provide Sarmiento with the required wage statements for more than twenty days. *See* Sarmiento Decl. ¶ 21. Accordingly, on the sixth cause of action, Sarmiento is entitled to $5,000.00 for the wage statement violation.

        5.     <u>Equipment Costs</u>

As noted above, the Complaint's uncontested allegations suffice to establish the defendants' liability for failing to reimburse Sarmiento for the tools of his delivery work. But while those allegations are deemed true for purposes of liability, the court cannot rely on them to determine the amount of damages the defendants owe. Instead, Sarmiento must adduce evidence to establish such damages to a reasonable certainty. He has not done so: he has neither described his unreimbursed equipment costs nor provided any documentation of his expenses. Because Sarmiento has failed to establish his damages on the seventh cause of action with any reasonable certainty, I respectfully recommend against any award on that count.

        6.     <u>Timely Payment</u>

Sarmiento alleges that the defendants violated NYLL § 191 in that the defendants did not pay Sarmiento on a regular weekly basis. NYLL § 191(1)(a) provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned…" Courts in this district have found that there is an implied right of action for a violation of

NYLL § 191(1) utilizing the damages provision at NYLL § 198. *See Scott v. Whole Foods Market Grp., Inc.*, 2019 WL 1559424, at *4-5 (E.D.N.Y. Apr. 9, 2019). Moreover, carpenters have been found to qualify as 'manual workers' for the purposes of this statute. *See id.* at *3 (citing *Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010)). However, the court need not reach the question of damages on this claim, as Sarmiento cannot recover liquidated damages under NYLL § 198 in an amount exceeding that awarded for unpaid wages. "Plaintiffs are only entitled to recover under one statute for the same hours of unpaid wages; double recovery of the same wages and related damages is not permitted." *Gonzales v. Gan Israel Pre-Sch.*, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014) (citations omitted). Because I have already determined that Sarmiento is entitled to the full one hundred percent liquidated damages award allowable for his unpaid minimum and overtime wages, I respectfully recommend against any award on Sarmiento's eighth cause of action.

       7.   Prejudgment Interest

New York law generally provides for an award of prejudgment interest on a variety of claims, including the claims for unpaid wages asserted here, at an annual rate of nine percent. *See* N.Y. C.P.L.R. §§ 5001, 5004. Where, as here, "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). A court has discretion to choose a reasonable accrual date. *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994). Courts often select the median date between the earliest ascertainable date the action arose, and the date Sarmiento filed suit. *See, e.g., Pavia v. Around the Clock Grocery, Inc.*, 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005). Sarmiento began his employment in January 2018 (based on the information in the bank statements, I will use Monday, January 15, 2018 as his presumptive starting date), and filed suit on February 19, 2019; the median between those dates is August 3, 2018. Applying a nine percent annual interest rate to a principal amount of $13,699.06 (the total unpaid wages) over a 606-day period between the median

date and March 31, 2020 (a reasonably likely judgment date after allowing for objections to this report), I calculate that the defendants owe Sarmiento $2,048.01 in interest.

8.    Attorneys' Fees and Costs

Both federal and state law authorize the court to award Sarmiento his reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Courts in this circuit assess fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing cases).[5] A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 420-21 (2d Cir. 2010); *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010). Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Ferrara v. All Am. Trucking Servs., Inc.*, 2012 WL 1042936, at *7 (E.D.N.Y. Feb. 17, 2012) (report and recommendation, quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)), *adopted*, 2012 WL 1041820 (E.D.N.Y. Mar. 28, 2012). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with

---

[5] I use the term "lodestar" only for ease of reference. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 n.4 (2d Cir. 2008); *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011) (describing the lodestar as producing a "presumptively reasonable fee" and noting that failure to calculate it as a starting point in determining a fee award is "legal error").

specificity the nature of the work done, the hours, and the dates. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances. *Scott v. City of N.Y.*, 626 F.3d 130, 133-34 (2d Cir. 2010). Inadequate documentation warrants reduction of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *7-8 (E.D.N.Y. July 22, 2005).

Sarmiento seeks reimbursement for his counsel in the amount of $2,447.50 at the following hourly rates: $450 for partner Michael Faillace ("Faillace"), who has over thirty years of experience; $200 for attorney Paul Hershan ("Hershan"), who has more than seven years of litigation experience; and $100 for paralegal assistants. *See* Faillace Decl. ¶¶ 10, 15h; DE 13-7 (billing records). The rates sought for both Faillace and the paralegal assistants exceed the hourly rates for comparable professionals normally awarded in similar cases in this district. Consistent with applicable precedent, I respectfully recommend that the court award fees based on the following hourly rates: $375 for Faillace, $200 for Hershan, and $75 for paralegal assistants. *See, e.g., Quito v. El Pedragal Rest., Corp.*, 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding $375 hourly rate for Faillace); *Santillan v. Henao*, 822 F. Supp. 2d 284, 300 (E.D.N.Y. 2011) (Block, J.) (approving hourly rate of $375 for Faillace); *Fundora v. 87-10 51st Ave. Owners Corp.*, 2015 WL 729736, at *1 (E.D.N.Y. Feb. 19, 2015) (reducing paralegal hourly rate from $100 to $75 consistent with rates awarded in other FLSA cases) (collecting cases).

Sarmiento's counsel billed a total of 7.95 hours of work as summarized below. Having reviewed counsel's billing records, I conclude that the hours claimed are reasonable. I therefore recommend the court award attorneys' fees in the amount of $1,471.25, as set forth below.

| Professional | Hourly Rate | | Hours Worked | Adjusted Fee |
|---|---|---|---|---|
| | Claimed | Adjusted | | |
| Faillace | $450 | $375 | 2.50 | $937.50 |
| Hershan | $200 | $200 | 1.00 | $200.00 |
| Paralegal assistants | $100 | $75 | 4.45 | $333.75 |
| Total | | | 7.95 | $1,471.25 |

Sarmiento seeks reimbursement for costs including the filing fee of this action, due diligence inquiries on each of the defendants, and service costs for each of the defendants. *See* DE 13-7 (billing records) at 2. I respectfully recommend that the court require the defendants to reimburse Sarmiento for these costs in the amount of $677.50.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court enter judgment against the defendants jointly and severally in the total amount of $41,594.87, consisting of $13,699.06 in unpaid wages, the same amount in liquidated damages, $5,000 for each of the two records-related violations, $2,048.01 in prejudgment interest, $1,471.25  in attorneys' fees, and $677.50 in costs.

IV.     Objections

I respectfully direct the plaintiff to serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service no later than March 9, 2020. Any objections to this Report and Recommendation are due by March 20, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the

district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v.*

*Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

       SO ORDERED.

Dated: Brooklyn, New York
      March 6, 2020

                                  /s/
                              James Orenstein
                              U.S. Magistrate Judge